Case 4:20-cv-00526   Document 13   Filed on 05/20/20 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
May 20, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| COURTNEY PROCELL, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 20-526 |
| § | |
| ENSCO INCORPORATED, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

Courtney Procell, a Louisiana resident, sued ENSCO Incorporated, ENSCO Limited, and ENSCO Intercontinental GmbH in Texas state court under the Jones Act, 46 U.S.C. § 30104, seeking damages for injuries that he received while working on a jack-up drilling rig in the Persian Gulf. (Docket Entry No. 1-3 at 1–2). The defendants timely removed to federal court. (Docket Entry No. 1). Procell now moves to remand on the ground that because ENSCO Inc. is headquartered in Texas, the forum-defendant rule precludes removal. He argues alternatively that removal is unavailable in this Jones Act case. (Docket Entry No. 6).

Based on the parties' pleadings, motions, and briefs, the record, and the applicable law, the court grants Procell's motion to remand and remands to the 270th Judicial District Court of Harris County, Texas. The reasons are set out in detail below.

**I.     Background**

At the time of the incident giving rise to this action, Procell was an employee of ENSCO Ltd. working aboard a ENSCO Intercontinental jack-up rig then located in the Persian Gulf. (Docket Entry No. 10-2 at ¶ 5; Docket Entry No. 10-3 at ¶ 4; Docket Entry No. 10-4 at 21:13–14). (Docket Entry No. 10-4 at 21:18–22). An ENSCO Ltd. employee located in Saudi Arabia oversaw

the rig's day-to-day operations. (Docket Entry No. 10-1 at ¶ 6). The rig flew a Liberian flag. (*Id.* at ¶ 4).

Procell alleges that he was hurt when he was asked "to move heavy pieces [of] equipment without being provided adequate instruction or proper equipment to perform the task," causing him to "suffer[] severe injuries to his back and other parts of his body." (Docket Entry No. 1-3 at ¶ 8). Procell alleges that he was further injured by "Defendants' failure to provide him with proper medical care and continuing to direct Plaintiff work in pain for days before allowing him to be removed from the vessel for medical treatment." (*Id.*). Procell sued the three ENSCO entities in Texas state court, claiming that they were negligent and that the jack-up rig was unseaworthy. (*Id.* at 1–3).

The defendants timely removed on the basis of complete diversity of citizenship. (Docket Entry No. 1 at 1). The defendants asserted that, while Procell is a Louisiana citizen, "ENSCO Intercontinental GmbH is a Swiss company with its principal office in Zug, Switzerland," "ENSCO Limited is a foreign business entity organized under the laws of the Cayman Islands with its principal office located in Grand Cayman," and "ENSCO Incorporated is a Texas corporation with its office in Houston, Texas." (*Id.* at 1–2). Procell moved to remand, and the defendants responded. (Docket Entry Nos. 6, 10).

## II. The Legal Standard

In general, a defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). There are exceptions. First, the forum-defendant rule provides that a case over which a federal court has diversity jurisdiction, *see id.* § 1332(a), "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such

action is brought." § 1441(b)(2). Second, cases brought under the Jones Act are not removable. *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995).

The Jones Act exception to removability is itself subject to exceptions. One exception is that "defendants sued under the Jones Act can defeat remand" if they can "show that there is no possibility that plaintiff would be able to establish a [Jones Act] cause of action." *Id.* at 176 (quoting *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993)). In reviewing this argument, a district court is to avoid "pretrying" the case but instead may "use a summary judgment-like procedure," *id.*, "resolv[ing] disputed questions of fact from the pleadings and affidavits in favor of the plaintiff." *Lackey*, 990 F.2d at 207.

The defendants also assert that "the forum defendant rule only applies to a 'properly joined' defendant" and that because "there is no reasonable possibility of recovery against ENSCO Incorporated," it "was not properly joined." (Docket Entry No. 10 at 8). The defendants' argument relies on an extension of the improper-joinder doctrine, which traditionally applies when a plaintiff has named a nondiverse defendant. *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (defendants may "establish improper joinder" by demonstrating the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court").

"No Circuit, let alone the Fifth Circuit, has conclusively held that the improper joinder doctrine extends to forum defendants." *WF/TX Invs., LLC v. Seneca Ins. Co.*, No. 4:19-CV-751, 2020 WL 1812672, at *3 (E.D. Tex. Apr. 9, 2020). Nevertheless, a question of improper joinder can ordinarily be resolved with "a Rule 12(b)(6)-type analysis." *Smallwood*, 385 F.3d at 573. Alternatively, as with the Jones Act bar-to-removal argument, a district court deciding whether joinder is improper may "pierce the pleadings and conduct a summary inquiry." *Id.* (citing *Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 389 n.10 (5th Cir. 2000)). In either circumstance, the court

"should resolve all disputed questions of fact in favor of the plaintiff." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 551 (5th Cir. Unit A Dec. 1981).

**III.   Analysis**

    **A.   The Forum Defendant Bar to Removal**

Procell's first argument for remand is that removal was improper under § 1441(b)(2) because ENSCO Inc. is a Texas citizen. (Docket Entry No. 6 at 4). The defendants do not dispute ENSCO Inc.'s citizenship, but they argue that it is irrelevant because "there is no reasonable possibility of Plaintiff recovering against ENSCO Incorporated." (Docket Entry No. 10 at 7).

Proving this point is made more difficult by the lack of specificity in Procell's pleadings. Aside from the descriptions of the parties, all the allegations in Procell's operative complaint are of the global sort, against "Defendants" generally; no allegations or claims relate specifically to ENSCO Inc. (Docket Entry No. 1-3). Procell claims that he was injured "as a result of Defendants' negligence," that the rig on which he was injured "was unseaworthy,"[1] and that "Defendants . . . failed to live up to their maintenance and cure obligations." (*Id.* at 3–4).

The defendants respond that there is no reasonable possibility that ENSCO Inc. can be held liable under any of these theories. (Docket Entry No. 10 at 9–11). "To state a claim under the Jones Act, a plaintiff must establish that the defendant was his employer." *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 589 n.3 (5th Cir. 2016). Additionally, a "seaman may claim maintenance and cure only from [his] employer." *Liberty Seafood, Inc. v. Herndon Marine Prods., Inc.* (*In re Liberty Seafood, Inc.*), 38 F.3d 755, 758 (5th Cir. 1994). The defendants argue that because ENSCO Inc. was not Procell's employer (*see* Docket Entry No. 10-3 at ¶ 4), he cannot

---

[1] Procell alleges that he worked on "the ENSCO 141" but that "the ENSCO 140 [sic] was unseaworthy." (Docket Entry No. 1-3 at ¶¶ 8, 10). In context, however, the court assumes that the latter was a typographical error.

4

establish a cause of action against it either under the Jones Act or for failure to pay maintenance and cure. Similarly, recovery for unseaworthiness "traditionally is available only against the shipowner and the vessel." *Guidry v. Cont'l Oil Co.*, 640 F.2d 523, 530 (5th Cir. 1981). The defendants argue that because ENSCO Inc. did not own the jack-up rig, (*see* Docket Entry No. 10-3 at ¶¶ 5–6), Procell cannot prevail on a cause of action against it for unseaworthiness. Finally, the defendants argue that Procell cannot prevail on a cause of action against ENSCO Inc. for negligence, both because ENSCO, Inc. "owed *no duties* to Plaintiff in connection with the alleged events" and because "Plaintiff cannot show a causal connection between ENSCO Incorporated's acts or omissions and Plaintiff's alleged injuries." (Docket Entry No. 10 at 11). *Cf. Thomas*, 832 F.3d at 592 (a negligence claim under general maritime law requires "a duty owed by the defendant to the plaintiff . . . and a causal connection between the defendant's conduct and the plaintiff's injury").

Procell neither responds to the defendants' arguments nor dispute their factual assertions. The only specific statement in his motion to remand about ENSCO Inc. is that it "has appeared, answered, and taken the deposition of Plaintiff in the state court proceeding." (Docket Entry No. 6 at 2). None of these steps provide a basis for liability. The court agrees with the defendants that Procell has not demonstrated a reasonable basis to predict that he could establish a cause of action against ENSCO Inc.

The defendants' argument goes one step further. The defendants argue that because Procell could not establish ENSCO Inc.'s liability, this case is removable from Texas state court, notwithstanding ENSCO Inc.'s Texas citizenship. (Docket Entry No. 10 at 8). The defendants ask this court "to extend the [improper joinder] doctrine to the forum defendant rule." *Morris v.*

5

*Nuzzo*, 718 F.3d 660, 667 (7th Cir. 2013). Because the court grants Procell's motion on another ground, it need not reach this issue.

### B.     The Jones Act

Procell also argues that removal was improper because he has stated claims under the Jones Act, and Jones Act cases are not removable. (Docket Entry No. 6 at 8). The defendants respond that the Jones Act does not apply because Procell's claim should be decided under foreign, not United States, law. (Docket Entry No. 10 at 16).

Choice of law in a maritime-tort case like this one is determined using the "*Lauritzen–Rhoditis* factors." *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1119 (5th Cir. 1995) (en banc) (citing *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 308–09 (1970), and *Lauritzen v. Larsen*, 345 U.S. 571, 583–91 (1953)). Those factors are:

> (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured worker; (4) the allegiance of the defendant shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations.

*Id.* Which country's law applies is not determined by simply tallying the factors. Rather, "the significance of each factor must be considered within the particular context of the claim and the national interest that might be served by the application of United States law, particularly the Jones Act." *Fogleman v. ARAMCO*, 920 F.2d 278, 282 (5th Cir. 1991) (citing *Rhoditis*, 398 U.S. at 308–09).

The first factor, the place of the wrongful act, is "entitled to considerable weight" in a case involving a mostly stationary vessel like a jack-up rig. *Coats*, 61 F.3d at 1120. The alleged wrongful act took place in the Persian Gulf, off the Saudi Arabia coast. (Docket Entry No. 10-1 at ¶ 5; Docket Entry No. 10-4 at 21:20–22). Procell argues that a wrongful act also occurred in Texas, when the defendants "failed to properly pay his maintenance and cure benefits" there.

(Docket Entry No. 6 at 11). But neither Procell nor the court has identified "a case supporting this interpretation of the 'place' of the wrongful act." *Butler v. ENSCO Intercont'l GmbH*, No. H-16-578, 2017 WL 496073, at *3 (S.D. Tex. Feb. 7, 2017).

The second factor, the law of the flag, "has traditionally been of cardinal importance in determining the law applicable to maritime cases." *Fogleman*, 920 F.2d at 282. It is entitled to relatively less weight, however, in the context of "a case involving a fixed drilling platform." *Solano v. Gulf King 55*, 212 F.3d 902, 907 (5th Cir. 2000). The parties agree that the rig flew a Liberian flag. (Docket Entry No. 10-2 at ¶ 5; Docket Entry No. 6 at 11).

The third factor, the allegiance or domicile of the injured worker, is also "more significant" in a case involving a fixed platform. *Coats*, 61 F.3d at 1119. The parties agree that this factor favors the law of the United States. (*See* Docket Entry No. 6 at 13; Docket Entry No. 10 at 14).

The fourth factor, the allegiance of the defendant shipowner, has "diminished importance" when the vessel is not a ship but a jack-up rig. *Solano*, 212 F.3d at 907. In this case, the owner of the rig is ENSCO Intercontinental, a Swiss company. (Docket Entry No. 10-2 at ¶¶ 3, 5).

The parties agree that the fifth factor, the place of the contract, is irrelevant. (Docket Entry No. 6 at 14; Docket Entry No. 10 at 14). The Fifth Circuit has said that the sixth factor, the inaccessibility of the foreign forum, is relevant only in a *forum non conveniens* analysis. *See Coats*, 61 F.3d at 1120. The court does not consider either of these factors.

The seventh factor, the law of the forum, is "given little weight in determining choice of law." *Fogleman*, 920 F.2d at 283 (citing *Lauritzen*, 345 U.S. at 590–91). The parties agree that to the extent this factor matters, it favors applying United States law. (Docket Entry No. 6 at 14–15; Docket Entry No. 10 at 15).

7

Finally, the eighth factor, the shipowner's base of operations, points to Saudi Arabia. In the context of "relatively permanently based vessels," the Fifth Circuit has ruled that "it is the base from which the rig is operated on a day-to-day basis rather than the base of operations of the corporate or ultimate owner of the rig which is important for choice of law purposes." *Fogleman*, 920 F.2d at 284 (citation omitted). The defendants have presented unchallenged evidence that the rig's day-to-day operations were managed from Saudi Arabia. (Docket Entry No. 10-1 at ¶ 6).

In their notice of removal, the defendants asserted that Liberian law controls. (Docket Entry No. 1 at 5). The court disagrees. The only factor supporting applying Liberian law is the law of the flag. Despite that factor's traditional importance, it is not dispositive. In *Rhoditis*, for instance, the Supreme Court ruled that United States law applied in a case when the law of the flag was Greek so was the plaintiff's allegiance and the place of contracting, *see* 398 U.S. at 308–10. *Rhoditis*, unlike this case, involved an injury aboard a ship, *see id.* at 307, meaning that the law of the flag was entitled to "substantial weight," *Solano*, 212 F.3d at 906. Similarly, in *Bailey v. Dolphin International, Inc.*, 697 F.2d 1268 (5th Cir. 1983), *overruled on other grounds by In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir. 1987) (en banc), as here, the law of the flag, the plaintiff's allegiance, and the place of the wrongful act pointed in three different directions. The Fifth Circuit determined that the country of the plaintiff's allegiance and the country where the injury occurred were each more important than the flag of the jack-up drilling rig. *See id.* at 1275–78.

Perhaps because of the tenuous link between Liberia and the facts of this case, the defendants' response brief retreats from the position that Liberian law applies, but the brief does not identify which other country's law should apply in Liberia's place. Instead, they observe that "the laws of multiple countries . . . are potentially implicated" and argue generally that United

8

States law should *not* apply. (Docket Entry No. 10 at 16). This argument is not supported by the case law and is not persuasive.

In sum, two factors, one important and one unimportant, point to the United States. Two more factors, only one of which is entitled to significant weight, point to Saudi Arabia.[2] Another points to Liberia, and yet another points to Switzerland. This court has previously ruled on this precise mix of factors, in another case involving the same defendants. *See Butler*, 2017 WL 496073, at *3–4.[3] In *Butler*, although recognizing that "the question is a close one," this court found "a 'reasonable basis for predicting that the plaintiff might establish liability' under the Jones Act" and remanded. *Id.* at *4 (quoting *B., Inc.*, 663 F.2d at 550). Despite citing *Butler* on various other points, the defendants offer no ground to distinguish that case's choice-of-law analysis. As in *Butler*, the court finds that this case is not removable.[4]

## IV.  Conclusion

The court grants Procell's motion to remand, (Docket Entry No. 6), and by separate order remands to the 270th Judicial District Court of Harris County, Texas.

SIGNED on May 20, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge

---

[2] The court presumes that the rig was located within Saudi Arabia's territorial waters, though the record is not clear on this point. If not, there would be even less reason to apply Saudi law. *Cf. Pelagidis v. Future Care, Inc.*, No. H-17-3798, 2018 WL 2221838, at *11 (S.D. Tex. May 15, 2018) ("Because the accident occurred when the vessel was 15 miles off the Texas coast, it occurred outside the territorial United States.").

[3] In *Butler*, the jack-up rig in question was located off the coast of, and operated from, Angola, rather than Saudi Arabia, and it flew the flag of the Marshall Islands, rather than Liberia. *See Butler*, 2017 WL 496073, at *3–4. The substitution of these two countries makes no difference to the analysis.

[4] As a third basis for remand, Procell argues that ENSCO Ltd. and ENSCO Intercontinental failed to adequately allege their citizenship. (Docket Entry No. 6 at 6–8). This court rejected the exact argument as to these same defendants in *Butler*. *See* 2017 WL 496073, at *1 n.1. It fares no better today.